Good morning, your honors. May it please the court. First, I would like to uh say thank you for having me first time here. It's quite an honor. Well, welcome and the court notes that you were appointed under the Criminal Justice Act and we appreciate your willingness to serve. Thank you, your honor. As the court has already noted, I am the attorney for the appellate Mr. Gabriel Sherrod. Um, I think the issues in this case can be summarized in the one overarching field, whether or not it was reasonable for the officers to enter Mr. Sherrod's house on the night in question, um, without knocking and announcing their presence prior to entry. Um, um, if we're gonna use subparts on that. Second issue would be whether or not the violation to knock and announce triggers the exclusionary rule and the lower court made a finding that the door was open, which they believe was a determining factor into whether or not the officer's entry without knocking announce was reasonable. Is there any evidence that would show that that finding that the door was open is clearly erroneous? Yes, your honor. Uh, good morning, Judge Strauss. Uh, I would say that there were several things on the record. Um, the lower court in their R&R and when I say R&R, of course, you know, uh, uh, report and recommendation. The court found officer Trost, who was the officer whose entry was questioned, uh, attributed his testimony in regards to whether or not the door was open. However, officer Trost, uh, made several, um, I don't want to say impeaching, uh, comments during his testimony and inconsistent statements in regards to his entry, in regards to his view, uh, of the firearms that he claims were in plain view. Um, and if we're going to challenge officer Trost testimony or look at the contradicting evidence, in addition to his own statements, you have statements by other officers. There were five other officers there. Um, two of them testified that number one, um, for example, officer Trost, uh, alleged in his testimony that he yelled gun when he saw Mr. Sherrod, when he walked in and saw Mr. Sherrod, uh, get up from the couch and flee toward the rear of the house. He stated that he yelled gun, uh, uh, I'm sorry, Sergeant Hunter, uh, who also entered right behind officer Trost said that he'd never heard officer Trost say anything about a gun. But all of that impeaches later, later, later events, I guess. And I'm really looking at the case law that suggests that you don't have to knock and announce when the door is already open. So I'm just trying to figure out if that case law binds us here or whether we, whether you, in your view, we can overcome that finding that the door was open. Yes, Your Honor. So, so in addition to other statements, to, to statements by other witnesses, including the officers, uh, the court noted in their R and R the audio, uh, uh, evidence the officers were wearing, uh, not body cams, but, uh, but, uh, body microphones. And the court noted that you could hear a faint cracking of the hinges. So the door opening, which, uh, the court noted, and I'm paraphrasing, uh, that it, it showed that the door was being opened wider, uh, but not that the door was closed. Um, and therefore they, they found that the, uh, the Mr. Sherrod son testimony that the door was being, uh, that the door had been pushed open or kicked open by the officers was, uh, not correct. Um, uh, Mr. Sherrod's son testified that, um, he had tried to close the door and the officer stopped him. Now, the other statements that officer Trost made in his own testimony is that, um, he stopped that, that he stopped the door from being closed, which was heard also in audio, uh, statements that he made to, uh, I believe it was a detective robot. He called detective robot after, uh, the search had taken place and was having a phone conversation with him in the car in which he also muted his microphone doing that conversation. But you can hear him say, I stopped the door from being closed. Now, part of the R and R that was not addressed was that before officers arrived at this location, um, they, uh, they erroneously went to the wrong house before. And when they went to the wrong house, the resident at that house opened the door and had no clue what they were talking about. And officer Trost stopped that individual from closing his door while he was trying to find out what was going on. He said, no, you're not closing the door while we're here. The door stays open. So we find that that in and of itself would support the allegations in this case. And these allegations were made before that discovery was ever even turned over to us, your honor. So it's not as if we found out that information and then said, oh, we're going to make these allegations after the fact, this is information that the court in the lower court had no, made no determination on a left. They left that issue moot, moot, um, in their R and R. And these are statements by officer Trost. And when he was questioned about it, um, said that that didn't happen or, or paraphrasing. He said that that was in regards to policy. It's not policy, but that's just something that he does. And then when he was questioned about, uh, statements that he made, such as, um, stopping Mr. Sherrod son from closing the door, uh, he said poor choice of words. So he admitted that he said that. So he did stop the door from being closed, which in our opinion is not an open door. That is a, um, issue where, whether it's fourth century in regards to kicking a door open or stopping an individual from, uh, closing the door, I would, I would say that there is no distinction between the two. Well, and you mentioned the remedy and I want to make sure you have time to talk about that. It seems to me that the knock announced role in the search warrant, uh, context, the court has already said the remedy is not exclusion of any evidence. And so my question for you is when you have an arrest warrant, why should the rule be any different? Well, your honor. Uh, and, and thank you for raising that point. There are no cases in regards to this circuit that has raised this issue, uh, since the Hudson Supreme court decision in 2007. However, uh, there is a second circuit, I'm sorry, a DC circuit case, um, where, uh, in Weaver, the court used the appeals court, uh, used the Hudson analysis and they showed that, um, the results are different that in a, in a search warrant, um, the Hudson court found that the exclusionary rule was never intended to protect, uh, the seizure of the evidence in which a search is actually coming in to locate if that makes sense. So therefore in the arrest warrant context, it does not give officers a blanket entry into a house. And there's other case law such as the gall, which was a 1981 case, um, by the Supreme court where the court distinguished between, um, search and arrest. And they also noted, even though that case had other issues, but the court noted, noted that, um, that if you allow entry, this blanket on an arrest warrant, then officers could use that as pretext to enter into a home, um, when they don't have probable cause to get a search warrant. But to, you know, I traced back sort of the, the interest at common law and the knock on ounce rule, because knock an ounce actually goes back really far as you know, and the suggestion is not to protect from the discovery of evidence, but it's actually to allow the person to, you know, put on clothes, prepare themselves to submit to authorities. Um, it's more of a convenience thing. And that's sort of what the court relied on in the Hudson case to some extent as well. And so it seems to me that the interests are sort of the same, at least as the knock an ounce rule has evolved. Yes, Your Honor. And I see that my time is running out, so I would like to reserve some time, uh, to address that, uh, in my rebuttal. Sure. Thank you. Go ahead and answer the question. Well, yes, Your Honor. And I'll give you some time in rebuttal. Thank you. Thank you, Judge Grunder. Um, and you're right. It goes back hundreds of years. And I, uh, but I would like to note a case, a Supreme court case from 1948 where, uh, and that's McDonald versus U S where, uh, police were investigating a gambling operation from, uh, by an individual who was renting a room, uh, a room in a house from a lady. And they entered into her room through the window because they thought that they heard, uh, things going on in there. And the court noted in that opinion, uh, one of the interest in, uh, in knocking an ounce is the protection of human life and limb, uh, because unannounced entry may provoke violence, uh, self-defense, you know, surprise, uh, uh, the resident in this case, Mr. Sherrod had firearms. Now, was he supposed to have those? There's no question, but it was a blessing that, you know, no, no one lost their life. No one was injured in this particular case, but you have officers coming into a house at 10 PM at night unannounced. Um, that's just not something that would be a smart decision. So we would, you know, that in and of itself, the court has already held that, uh, the reason why knocking an ounce is very important as you stated is for the reasons other than the suppressed, I'm sorry, to preserve evidence. Thank you, Your Honor. Thank you, Mr. Gray. May it please the court, uh, Brian Casey appearing on behalf of the United States in this matter, and we would ask the court to, uh, affirm both the conviction and the sentence in this case and going right to, I think the heart of the questions, uh, uh, for my, uh, opposing counsel is really what this appeal comes down to is an appeal over credibility finding, and this court's case law is pretty clear that that's very rarely appealable. Counsel, will you, will you clear it for me? I mean, is the government, does the government concede that there was a violation of the knocking an ounce rule here or, and that the, the entry in the search was otherwise reasonable or, or I think that your brief refers to a deviation in, in the knocking an ounce rule. Could you just clear that up for me? In my own mind, it's not. No, Your Honor, we don't concede a, uh, a violation because, because of the fact that the door was open, um, in these circumstances, it was reasonable for the officer to enter without knocking an ounce. Okay. So there wasn't a knocking an ounce, but the entry was otherwise reasonable. That's correct, Your Honor. Um, so there are exceptions to the knocking an ounce, such as futility, uh, such as consent. Um, and in this case, uh, uh, what the district explicitly found is that the officer, uh, uh, believed that the defendant's son was leading him to his father. So it's a consent. I think consent. And then also because the door was open, futility is another way that the cases have looked at it. Well, and then the, just as a matter, instead of knocking, did the officers announce officers here or anything like that when they entered the home? He did not. What he did was call out the defendant's name. He called out, uh, Gabriel. I mean, he said it in a way with sort of a lift in his voice. So it sounded like a question, you know, Gabriel, um, are you there? Um, is kind of what he was sounding like he was asking. Um, you can hear that on the recording fairly clearly, um, on there. There's a lot of things on the recording you can't hear. So, um, some of the inconsistencies between the testimony and the recording, it really, uh, when you listen to it, you really can't say that that was, uh, impeaching because you just don't know if it got, if, if, if things got picked up or not. Well, let me ask you this. And this, this is a way to distinguish some of our prior cases, perhaps, and maybe I'm wrong about this, but you don't need to knock because the door is open. It's kind of silly to knock frankly, when the door is open. Um, but what about the announce, right? I mean, should they have come in and done what they would have done at the door and said, police officers here, Mr. Sherrod, are you available or something to, to, to announce that they were there and what they were there for? Should that still be a requirement, even if the door is open? Well, I think the requirement still goes back to reasonableness. And in this context, um, I don't think you need to graft on, you know, a pure announce requirement for open doors because open doors come in all sorts of different situations. In this context, the court's finding was that he was very, he was very casual. He was acting very calm. Uh, his gun was not pulled. He thought the son was leading him to his father. So, you know, he kind of thought he had consent to come in. And as he's kind of pushing through the threshold, he calls out the father's name. Um, I think it's just more a matter of second guessing, whether he should have said police, Gabriel, are you in there? Um, as opposed to just that, you're calling out his name, but I don't see any constitutional, I don't see any reasonableness where we need to create that, uh, as a bright line rule, because in this context, I think the officers acted entirely reasonably. So if they weren't reasonable, should we follow the, the, um, DC circuit case? Weaver or is Weaver wrong? Uh, Weaver's wrong, your honor. Um, and I think it's kind of interesting because I've sort of taken the argument out of, out of order. Cause I do think the, the, the factual ruling of the district court, the district court ruled on is the factual part and found that it was reasonable. And I think that that is right. Um, but the government's position as we briefed is that we don't even get there because Hudson controls and there is no, uh, exclusionary rule for violations of knocking it out. I think the Weaver case is just simply wrong. Hudson controls in the context of a search warrant. I think it controls in the context of warrants. And I don't think Hudson makes that distinction. I think the Weaver court, um, goes out of its way to try to make the distinction, but doesn't do it successfully. The Weaver court tries to say that here are the interests that Hudson, uh, and, and, and Supreme court, you know, president, uh, had always, um, looked at for, um, underlying the knocking it out rule, protection of property, protection of life and protection of privacy. And the Weaver court seems to now say that because it's an arrest warrant, that protection for privacy interest is different. It's new, it's bigger, somehow it's enhanced, but when you try to drill down and see, well, how is it enhanced? How is it different? It's impossible to distinguish from, uh, the Weaver court creating an interest that Hudson explicitly says it doesn't exist. And that is the interest to hide evidence. Hudson says that interest doesn't exist. And I, there's no really room for the Weaver court to say, because it's an arrest warrant, this interest has now expanded and not expanded to basically saying, well, what they really have is, uh, because it's an arrest warrant because they could come to the door. They actually have the ability, some interest in being able to hide evidence. Um, that's just not, uh, I think that's just wrong. I think that just contradicts Hudson and I don't really see the distinction that's made there. And your point, I think would be also to, to sort of leverage in on what I was talking about earlier. It's wrong as a matter of history as well, right? Because historically the knock and announce rule was about something entirely different than, than, than, uh, hiding evidence or moving around, you know, furtively around the residence, trying to, trying to get away or something like that. That's absolutely right. Your honor. I mean, you know, the knocks and announce rule and, and, and, you know, it, it, it, it makes a lot of sense. It makes a lot of sense for safety reasons. Um, and, and even when, you know, there isn't a, you know, the requirement there just kind of makes a lot of practical, you know, sense, but it's never been the case that the law has recognized that a, a criminal defendant has sort of a, uh, a right to destroy evidence or right to hide evidence. And what is the case? Um, um, and this is very clear in the Peyton Supreme Court's Peyton decision is that when officers have, uh, an arrest warrant and a belief that the defendant is home, and that's not challenged in this case. Um, you know, it's, it's, it's not challenged that they had a reasonable belief that defendant was home, then they can enter the house. And so this case really just, just is, is, uh, uh, to get relief, uh, defendant would need, uh, this court to apply the knock and announce, excusory rule to knock and announce contrary to Hudson, but also find that it applies in, in this factual scenario where it really doesn't apply at all. Um, if there's no further questions on that issue, I'd just like to just very briefly touch on the second issue raised, it's the reasonableness of the sentence. Um, uh, in this case, the defense guidelines would have been 235 months and above, um, but for the statutory cap, statutory cap was about half of that 120 months. District court made a very good record, um, and explicitly said, do not understand your 120 month sentence to be a downward variance. It's the sentence you're getting, cause it's the most I can give you. I would certainly give you more, um, under that record, uh, there's no, uh, error and there's no error in how the, uh, court, uh, balances 3553 AF factors. So we'd ask for you to Mr. Gray, you have a little rebuttal time. Thank you. May please the court. I would like to just, uh, respond to a few of the governments of Mr. Casey's points that he made on behalf of the government, um, in regards to the knock and and the fact that it's never been intended to hide evidence. I would agree with that. However, um, there is a distinction between an arrest warrant and a search warrant, which is why there's not just called a warrant. Um, and even with an arrest warrant, it has limited authority to enter a house and to do a protective sweep on, uh, adjoining rooms, uh, not to search the entire home. Now in the history of this country, there's probably been, you know, who knows how many times that officers have had to, uh, apprehend a suspect in their home, uh, where there's evidence of some other crime, uh, that they didn't know about because the, the, the individual complied and they took them into custody without incident. Mr. Sherar was never given that opportunity here. Um, there is a, like to point out a case, um, where, and that would be Miller, the Supreme Court Miller decision, where it says that, uh, and that was a 19, uh, 1958 Supreme Court decision where it says that the law was intended to protect both the good and the bad. Um, therefore we cannot in the, in the law should not distinguish. Well, this guy had committed a crime and we found out in violation of his constitutional rights. So therefore we should uphold whatever, uh, the court found because clearly he's guilty. Counsel, I want to ask you a question and it goes to the DC circuit decision. And actually something you said brought this up, um, about the destruction of evidence. Are you familiar with the case of Kentucky versus King? And I'll describe it briefly. It's a situation in which somebody ran into a residence. The police then did a knock and announce and they heard toilets flushing and they heard all kinds of movements within. And the Supreme Court said at that point, they could rush right in under exigent circumstances and sort of freeze the scene, collect evidence, things like that because of exigency that would seem to undermine your argument to some degree. Correct. You're you're on it. And you're absolutely right. In those circumstances. Again, here we have officers, uh, responding to a responding four hours later to a check the welfare call. And, um, they know that Mr. Sherrod has a outstanding warrant for burglary. And in that particular case, um, they walk in, have no knowledge of him ever being violent. And they see these guns, not piles of guns, five guns in total. Um, that that's completely different than knocking on a house, knocking on a door and hearing commotion inside. So that, that would be the distinction on it. And my time has run out. I just wanted to also in closing note that, uh, the court acts about, uh, mentioned whether or not it was silly to knock if the door was open. Well, the, the case in Mendoza, Mendoza, which was it in a circuit case, uh, the door was, there was no door and officers and they, and they were executing a search warrant officer still knocked on the door jam before entry and, and announced themselves, but no door, every case that was cited in this, uh, by the government and referenced by the court, at least involved some sort of announcement, your honor. And for those reasons, we ask that the court vacate, uh, the conviction of Mr. Sherrod and, and, uh, remain the case or further review. Thank you. Counsel. Thank you. The court appreciates your arguments and briefing cases submitted and we'll issue an opinion in due course.